The undersigned have reviewed the Award based upon the record of the proceedings before the deputy commissioner.
The appealing party has shown good grounds to reconsider the evidence. However, upon much detailed reconsideration of the evidence as a whole, the undersigned reach the same facts and conclusions as those reached by the deputy commissioner, with some modifications.
The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate order.
Accordingly, the undersigned find as fact and conclude as matters of law the following, which were entered into by the parties in their Pre-Trial Agreement, filed March 6, 1998, and at the initial hearing as
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case. The parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. Cigna was the carrier on the risk at all relevant times.
3. The employee-employer relationship existed between the parties at all relevant times.
4. The plaintiff sustained an admittedly compensable injury on August 29, 1994, as a result of which the parties signed a Form 21 Agreement for Compensation.
5. The plaintiff's average weekly wage was $500.00, which yields a compensation rate of $333.35 per week.
6. The defendants filed a Form 28B on April 18, 1995.
7. The issues for determination are:
 a. Whether the plaintiff sustained a change or worsening of condition for which additional compensation is due under the provisions of the North Carolina Workers' Compensation Act?
 b. Is the plaintiff's claim for change of condition barred by the provisions of N.C. Gen. Statute Section 97-47? and,
 c. To what amount of compensation, if any, is the plaintiff entitled to recover from the defendants?
8. The parties stipulated medical reports into the record:
a. Stipulated Exhibit 1 — Dr. Keller, two pages;
b. Stipulated Exhibit 2 — Dr. J. Robinson Hicks, 2 pages;
 c. Stipulated Exhibit 3 — Upstate Medical Center Records, eight pages;
 d. Stipulated Exhibit 4 — Dr. H. F. Barnhill of Rainbow Medical Center, sixteen pages;
e. Stipulated Exhibit 5 — Dr. John H. Cathcart, one page;
 f. Stipulated Exhibit 6 — RoMed Occupational Medicine, three pages;
g. Stipulated Exhibit 7 — Dr. P. R. Hawkins, four pages; and,
 h. Stipulated Exhibit 8 — Rock Hill Psychiatric Consultants, two pages.
***********
Based upon all of the competent, credible, and convincing evidence adduced from the record, and the reasonable inferences therefrom, the undersigned make the following additional
 FINDINGS OF FACT
1. The plaintiff began working for the defendant-employer as a truck driver on March 27, 1992. The plaintiff was born on August 15, 1951. The plaintiff's duties required him to deliver new Freightliner cabs from the plant in Cleveland, North Carolina, to various locations throughout the United States and Canada. Trucks were piggybacked and decked for transport. This required use of a sixty-five pound toolbox, which the driver would transport with him. A driver would also have to lift and move saddles weighing seventy-five to one hundred and twenty-five pounds. Drivers were required to climb off and on the truck to undeck the saddles, as well as to enter and exit the truck. In addition, a driver would frequently be required to transport vehicles on a return trip.
2. On August 29, 1994, the plaintiff sustained an injury to his tailbone when he struck his low back on a safety pole at Atlanta Freightliner.
3. On October 3, 1994, the plaintiff began treatment with orthopedist Dr. J. Robinson Hicks, who diagnosed him with a bruised tailbone. At no time during the course of his treatment did the plaintiff report any leg pain to Dr. Hicks. The plaintiff was referred for two weeks of physical therapy, after which was released to return to full duty work on October 3, 1994. The plaintiff reached maximum medical improvement on November 7, 1994 and retained no permanent partial impairment. The plaintiff reported that he had progressed very well and was working full time without restrictions.
4. The parties signed a Form 21 Agreement on September 23, 1994. However, the Agreement was never approved by the Industrial Commission. The plaintiff received temporary total disability benefits from September 12, 1994 through October 23, 1994. His last compensation check was paid on October 12, 1994.
5. The plaintiff filed a Form 33 Request for Hearing and a Form 18 on February 5, 1997.
6. On or about October 3, 1994, the plaintiff returned to work with the defendant-employer, where he continued to work until March 7, 1996 when he was terminated. At no time did the plaintiff ever complain of leg pain to his employer during his return employment.
7. Due to the heavy lifting and strenuous nature of plaintiff's job as a truck driver delivering new truck cabs, this job could not be performed by a person with a back problem or with a ruptured disc.
8. The plaintiff received the Form 28B on or about April 18, 1995. Plaintiff filed an initial Form 18 on April 18th of 1996.
9. In late 1995, the plaintiff was rear-ended in a motor vehicle accident in Chicago. He was out of work for several weeks as a result of the cervical strain he sustained. He returned to work on October 24, 1995 and was paid compensation through October 24, 1995. He was diagnosed with fibromyalgia by Dr. H. F. Barnhill on June 2, 1995.
10. In February of 1995, the plaintiff slipped on ice while in Canada delivering trucks. He reported this to Dr. Keller in March.
11. The plaintiff's wife is employed with Dr. Cathcart, a gynecologist. Dr. Cathcart provided the plaintiff with a prescription for pain medication in 1994. The plaintiff's wife also wrote a medical excuse on Dr. Cathcart's pre-stamped form on September 12, 1994.
12. The plaintiff did not seek work between March 1996 and March 1998.
13. Two weeks before the initial hearing, the plaintiff was employed as a temporary worker with Rockwell Corporation in York, South Carolina, where he earns $280.00 per week as a shipper for brake components.
14. On March 7, 1996, the plaintiff telephoned David Borton from the Detroit Michigan Airport. He complained that he was unable to go to St. Thomas, Ontario, to pick up a return load. Mr. Borton told the plaintiff to go to the company doctor in Romulus, Michigan if he was unable to go to Ontario. The plaintiff refused, and Mr. Borton advised that if he refused to go to the doctor or to deliver the load, he would be terminated. The plaintiff loaded his tool box and flew back to his home despite the instructions from Mr. Borton.
15. After the plaintiff returned to the terminal in Cleveland, North Carolina on March 8, 1996, he cleaned out his room in the bunk-house. He loaded a three-foot wide dresser and other items in his pick-up truck without any apparent difficulty.
16. Company policy dictated that an employee must go to the doctor in the city or town where he or she is hurt.
17. The defendant's policy required drivers to notify the terminal dispatcher of an injury.
18. During the course of his employment, the plaintiff developed a reputation for calling in sick when his assignment required weekend or holiday work.
19. On March 11, 1996, plaintiff returned to Dr. Barnhill, complaining of low back pain. An MRI revealed a bulging disc and disc degeneration at L3-4. No herniation was shown.
20. On October 20, 1997, the plaintiff was seen by Dr. Craig Brigham, where he was diagnosed with a herniated disc at L3-4. Dr. Brigham performed a microdiscectomy on the L3-4 level on November 25, 1997.
21. Dr. Brigham observed that the plaintiff exhibited several signs on inappropriate illness behavior. Dr. Brigham opined that the plaintiff was a person with psychological problems who was experiencing severe depression.
22. Dr. Brigham was not of the opinion that the plaintiff's disc herniation was causally related to the August 1994 incident due to the lack of leg and thigh pain in 1994, which are the clinical symptoms of an L3-4 herniation. The undersigned accept this view as credible and convincing.
23. On January 15, 1998, the plaintiff was released to return to work with no restrictions and was found to be a maximum medical improvement by Dr. Brigham.
24. Dr. Brigham opined that the fact that the plaintiff worked without any complaints of leg pain from October 1994 through March 1996 was significant, as radiating leg pain was the best objective indication for impingement on a nerve root. Absent this finding, Dr. Brigham would not causally relate the plaintiff's disc herniation to the bruise of the tailbone, the incident which occurred in 1994. The undersigned, therefore, find that plaintiff's disc herniation was not causally related to the 1994 incident.
***********
The foregoing stipulations and findings of fact engender the following
 CONCLUSIONS OF LAW
1. Pursuant to N.C. Gen. Statute Section 97-47, the Commission may review an award of compensation. However, the Form 21 Agreement signed by the parties was never approved by the Industrial Commission and thus never constituted an Award of the Commission. Thus, change of condition law is not applicable in this case. As N.C. Gen. Statute Section 97-47, does not apply, it cannot raise the two year bar from the last payment of compensation paid under the signed Form 21. The claim, itself, was timely filed within two years of the date of initial injury. N.C. Gen. Statute Section 97-24.
2. The plaintiff has failed to establish by competent, credible, or convincing medical evidence that his L3-4 herniation was causally related to the compensable injury on August 23, 1994.Click v. Pilot Freight Carriers, Inc., 300 N.C. 164,265 S.E.2d 389 (1980). The plaintiff failed to offer any competent, credible, or convincing medical evidence to causally relate plaintiff's herniated disc at L3-4 to his bruised tailbone injury in 1994.
***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enter the following
 AWARD
1. The plaintiff's claim is, and under the law must be, DENIED.
2. Each side shall pay its costs.
***********
IT IS FURTHER ORDERED that this case be REMOVED from the Full Commission hearing docket.
This the ___ day of _____________, 1999.
 S/_____________ J. HOWARD BUNN, JR. CHAIRMAN
CONCURRING:
S/_____________ BERNADINE S. BALLANCE COMMISSIONER
S/_____________ RENEE C. RIGGSBEE COMMISSIONER
JHB:kws